## MINI-ART OPERATING COMPANY, Inc., d/b/a CAPRI THEATHRE v. THE STATE OF ARKANSAS

5-6037                                             486 S.W. 2d 8

Opinion delivered October 30, 1972

*Arnold & Arnold* and *Frierson M. Graves Jr., Memphis* for appellant.

*Ray Thornton,* Atty. Gen., by: *Fred H. Harrison,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. On October 14, 1971, following the filing of a verified petition by the prosecuting attorney under the provisions of Ark. Stat. Ann. §34-101 et seq (Repl. 1962) the Miller County Circuit Court issued an ex-parte order temporarily enjoining the Capri Theatre of Texarkana, the Mini-Art Operating Co., and H. E. Enlow, owner and lessor of the premises, from showing obscene movies[1] and ordering the theatre padlocked pending hearing. After the filing of an answer by Mini-Art Operating Company (d/b/a Capri Theatre) denying the material allegations of the petition, and also the filing of a demurrer after testimony was taken, appellant demurring on the basis that the evidence was insufficient as a matter of law, the court, on November 12, 1971, entered an order granting a permanent injunction. The state had changed its theory from "obscenity"

---

[1] The film here in question depicted a beauty contest at a nudist camp.

to "aiding and abetting nudism"[2] and the court permanently enjoined appellants from "permitting any conduct of activities which encourages, fosters, glorifies, abets or promotes a nudist colony or camp or place or the practice of nudism".

On December 14, 1971, another order was issued permitting the theatre to be opened provided no motion pictures aiding and abetting nudism were shown and on January 5, 1972, a nunc pro tunc order was entered directing the sheriff of Miller County to remove the padlock previously placed upon the premises and appellants were permitted to renew the operation of the theatre so long as it did not violate the order mentioned in paragraph one. From that order of the court, appellants bring this appeal. Six points are relied upon for reversal but there is no need to discuss the last five points, though some seem to contain merit, since we have concluded that the order must be reversed under point one.

The order was issued under the provisions of Ark. Stat. Ann. §34-101 which provides *inter alia,* that the "conducting, maintaining, carrying on, *** of any nudist camp or club or building or place used to practice nudism, in violation of any of the laws of this state *** are hereby declared to be public nuisances, and may be abated under the provisions of this act." In rendering its order, the court stated that it took "into consideration the criminal law on accessory or one who aids or abets, or assists", and apparently relied on the statutes defining "nudism". This statute, Ark. Stat. Ann. § 41-2709 (Repl. 1964) defines that term as "the act or acts of a person or persons congregating or gathering with his, her, or their private parts exposed in the presence of one or more persons of the opposite sex as a form of social practice." Section 41-2710 then provides that it is unlawful to advocate, demonstrate, or promote nudism or to permit one's premises to be used for that purpose. This is an entirely separate act from §34-101 (the nuisance statute), and provides a criminal penalty for violation.

---

[2]The Court mentioned that "obscenity within itself is not grounds for a padlock order or for permanent injunctive relief, because the statute permitting the padlocking does not allude to obscenity".

Of course, the abatement of nuisance statute is penal in nature and accordingly must be strictly construed. *Hamilton · v. Pan American Southern Corp.,* 238 Ark. 38, 378 S.W. 2d 652, and cases cited therein. In *Davis* v. *Fowler, et al,* 230 Ark. 39, 320 S. W. 2d 938, we pointed out, and emphasized, that where penal statutes are involved *"nothing will be taken as intended that is not clearly expressed".* Accordingly, this case must be decided upon the basis of the provisions of §34-101.

Of course, it is at once apparent that the theatre was not used as a "nudist camp or club or building or place used to practice nudism". It is not contended that any person was practicing nudism; there were no nude people in the theatre; rather, there was a film depicting nude people. To say that the showing of this film comes under the statute prohibiting nudism (41-2709 and 41-2710) and thus constitutes the advocacy of nudism is no more logical than saying that a film shown in an Arkansas theatre which depicts one person striking another constitutes assault in this state. Nor is there any proof by the state that the purpose in showing the film was to promote or encourage[3] a nudist camp. The statute, in prohibiting nudism, prohibits *people* from appearing nude and conducting a nudist camp — not films of people appearing nude at a nudist camp. While from a moral standpoint, one may be considered as odious and opprobrious as the other, there is a definite legal distinction. Actually, it would appear that the state's theory that the film promoted nudism and the establishment of camps for nudists was only embraced because the abatement of nuisance statute does not authorize the padlocking of a building because of obscenity within itself.

As pointed out earlier, this statute must be strictly construed. We cannot hold that the legislature intended anything to be done that is not clearly expressed; the statute must be taken "as is". Under that established

---

[3]The trial court stated that it felt that the legislature, by its language, did not intend for nudist camps to be operated, and added "I will go one step further in interpreting what they say, that they do not intend for people to encourage the operation of unlawful nudist camps."

rule of law, it cannot be said that the abatement of nuisance statute is applicable.

Reversed.